UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARCELL WILLIAM CARTER,

     Petitioner,

v.

O'BELL THOMAS WINN,

     Respondent.

Case No. 20-cv-10575
Honorable Denise Page Hood

---

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Michigan prisoner, Arcell Carter, presently confined at the St. Louis Correctional Facility, in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* petition, Petitioner challenges his jury-based convictions for first-degree premeditated murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. In his petition, he brings claims concerning Fourth Amendment violations and jury instructions. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## I.      Facts and Procedural History

Petitioner's convictions arise from the shooting and killing of Trumaine Walker in 2016.  In April 2017, an Oakland County jury convicted Petitioner of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. The Michigan Court of Appeals summarized the facts of the case in its opinion on direct appeal as follows:

> Defendant's convictions arise from the May 17, 2016 shooting death of Trumaine Walker in Pontiac. The prosecution's principal witness testified that defendant and an accomplice approached him and the victim while displaying, respectively, an assault rifle and a handgun. The witness described defendant as a young black male of light complexion, clean-shaven, and wearing no face covering, and described the other assailant as a tall black male wearing perhaps a ski mask. According to the witness, defendant forced the victim inside his house briefly, while the other assailant detained the witness at gunpoint outside until a neighbor appeared and started asking questions. The victim then ran from the house with defendant in pursuit, and defendant shot the victim several times.

> Other eyewitnesses described the shooter as a young black male of average height, and one reported that a suspect hurriedly entered the passenger side of a car that then drove away. The police never determined the identities of the second armed assailant or the getaway driver. Eyewitnesses described the car involved in the shooting as light-colored and compact, which surveillance video confirmed, and also bearing an unfamiliar looking license plate. One witness suggested that the car looked fairly new, which, along with the unusual license plate, suggested it was a rental car.

The morning after the shooting, the police, acting on an anonymous tip suggesting that the car involved in the shooting was parked nearby, located a silver compact car with a Louisiana license plate parked in a driveway. The police watched the car until defendant and his girlfriend entered it and started driving, upon which the police forced defendant to stop in the middle of the street and, with guns drawn, immediately arrested defendant on suspicion of murder. A routine check of the Law Enforcement Information Network later revealed that there was an outstanding arrest warrant for defendant from New Orleans, for crimes involving controlled substances and firearms. The police executed search warrants of defendant's rental car, and also the house where he was staying. The search of the car turned up a bullet cartridge from a cup holder, and a rifle's ammunition magazine about half filled with bullets from the trunk. In the house, the police discovered an assault rifle of the type that left spent casings at the scene of the shooting, and a magazine drum for it that was about half filled with bullets.

The prosecution also presented an expert who testified that records from the provider of defendant's cell phone service indicated that calls involving defendant's phone, at the times relevant, were transmitted by way of utility towers located between defendant's place of residence and the location of the shooting.

*People v. Carter*, No. 338764, 2019 WL 3433079, at *1-2 (Mich. Ct. App. July 30, 2019) (unpublished).

The trial court sentenced Petitioner as a third-offense habitual offender, Mich. Comp. Laws § 769.11, to serve terms of imprisonment of life for the murder conviction, 4 to 10 years for the felon-in-possession conviction, and two years for each felony-firearm conviction, the latter two

sentences to run concurrently with each other but consecutive to the sentences for their respective underlying felonies. *Id*.  Petitioner directly appealed to the Michigan Court of Appeals and filed a motion to remand the matter for an evidentiary hearing on the issue of whether there was probable cause to stop the vehicle and arrest Petitioner, and whether trial counsel was ineffective for failing to file a motion to suppress. (ECF No. 11-20, PageID.824-826.)  On February 28, 2018, the Michigan Court of Appeals granted the motion to remand. (*Id*. at PageID.743.)

On June 7, 2018, the trial court held the evidentiary hearing.  (ECF No. 11-18, PageID.599.)  After the hearing, the trial court ultimately concluded that probable cause existed to arrest Petitioner and search the vehicle. The court also concluded that trial counsel was not ineffective for failing to file a motion to suppress. (ECF No. 11-19, PageID.698.)

On July 30, 2019, the Michigan Court of Appeals affirmed Petitioner's convictions and sentence on direct appeal, *Carter*, 2019 WL 3433079, at *8, and the Michigan Supreme Court denied leave to appeal, *People v. Carter*, 505 Mich. 947, 936 N.W.2d 460 (2020).  Petitioner now seeks habeas relief on the following grounds:

> I.    The police did not have sufficient information to stop the Toyota, even for an investigative stop based on an anonymous tip, and did not have probable cause to immediately arrest Mr. Carter. The evidence discovered from subsequent searches

4

should have been suppressed, as the searches depended on evidence obtained from the unconstitutional stop of the car. In the alternative, Mr. Carter was denied his right to the effective assistance of counsel because the trial attorney's failure to move to suppress that evidence. The trial court erred by denying Mr. Carter's motion for new trial and the Court of Appeals erred by affirming.

II.      Mr. Carter's Fourth Amendment right to privacy was violated by the prosecution's admission of evidence of the approximate location of his cell phone records where the prosecution did not obtain a warrant to obtain the records. The good faith exception does not apply because it was prosecution who used a court order instead of a warrant rather than the police.

III.     The trial court erred by giving an aiding and abetting instruction when the prosecution did not present any evidence that anyone other than Mr. Carter was the alleged principal offender in the case. Alternatively, Mr. Carter was denied the effective assistance of counsel by his trial attorney's failure to object.

Pet. at 5, 7, 8; ECF No. 1, PageID. 5, 7, 8.

The Respondent filed an answer contending that all three claims lacked merit and were subject to the defense of procedural default. The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   A procedural default ordinarily is not a jurisdictional matter.  *Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016) (quoting *Trest v. Cain*, 522 U.S. 87, 89

(1997)).  A court may bypass a procedural-default question if the claim is easily resolvable against the habeas petitioner.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Court finds it unnecessary to address this procedural-default question.  The Court, therefore, will proceed to address the merits of the claims.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

### III.   Analysis

A. Claim # 1. The Illegal Stop and Arrest and Ineffective Assistance of Counsel Claims

Petitioner first asserts that he is entitled to habeas relief because the police lacked the proper legal bases for stopping the vehicle and arresting him and, thus, all evidence obtained from the subsequent search should

7

have been suppressed, and trial counsel was ineffective for failing to file a motion to suppress the evidence. The Michigan Court of Appeals concluded that no constitutional violations occurred and denied relief. The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

First, as to the illegal search and arrest issue, it is well-settled that federal courts will not address a Fourth Amendment claim on habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by a failure of the state's corrective process. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise an illegal arrest claim in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

Michigan has a procedural mechanism which presents "an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim."

8

*Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, the petitioner is entitled to relief on this claim only if he shows that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner has made no such showing. The record demonstrates that Petitioner clearly had the opportunity to file a motion to suppress. Days before trial, defense counsel raised the issue of whether there was sufficient probable cause to search the vehicle and arrest Petitioner based on the car being identified in the shooting and Petitioner being the driver of the vehicle. (ECF No. 11-10, PageID.361-364.) Defense counsel indicated to the trial court that he would submit a motion to suppress. (*Id*. at PageID.364.) However, he did not formally do so. When the parties returned to court the next day, the trial court addressed the issue on the record and stated that it would have found probable cause under the facts

presented. (ECF No. 11-11, PageID.370.) The court further stated that even if probable cause did not exist, Petitioner would have nevertheless been arrested for a felony warrant and the evidence stemming from that arrest would be admissible. *Id*. The court then denied Petitioner's motion on the record. *Id*. Thus, given that Petitioner clearly had an opportunity to raise the illegal search and arrest claim, and did so in some capacity on the record, his Fourth Amendment claim is not cognizable on federal habeas review pursuant to *Stone v. Powell*. Therefore, habeas relief is not warranted on this issue.

Second, with respect to the effectiveness of trial counsel, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced

the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performances. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

In this case, Petitioner fails to establish that trial counsel was ineffective.  The Michigan Court of Appeals ruled that "the trial court erred neither in admitting the evidence obtained in the challenged searches, nor in concluding that defense counsel was not ineffective for having abandoned the suppression motion below." *Carter*, 2019 WL 3433079, at *6.  Given the Michigan Court of Appeals' ruling that Petitioner's search and arrest did not violate the Fourth Amendment, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct. Trial counsel cannot be deemed ineffective for failing to make a futile or meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375

12

(6th Cir. 2020); *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). Therefore, no constitutional error occurred, and habeas relief is not warranted.

B. <u>Claim # 2. The Illegal Search and Seizure of Cell Phone Records Claim</u>

Petitioner next argues that his Fourth Amendment right to privacy was violated when the state obtained his cell phone records without a warrant. The Michigan Court of Appeals rejected this argument on direct review and ruled that "the police acted in good faith in obtaining defendant's [cell-site location information] CSLI at the time they did. As a result, defendant is not entitled to a new trial." *Carter*, 2019 WL 3433079, at *6. The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

Moreover, this Fourth Amendment claim is not cognizable on habeas review for the same reasons Petitioner's first claim is not cognizable. Because Petitioner has made no showing that he was prevented from litigating this Fourth Amendment issue, his claim is not cognizable on federal habeas review pursuant to *Stone v. Powell*.

13

C. <u>Claim # 3. The Defective Jury Instruction/Ineffective Assistance of Counsel Claims</u>

Lastly, Petitioner argues that he is entitled to habeas relief because the evidence presented at trial did not support the trial court's aiding and abetting instruction and defense counsel was ineffective for failing to object to the instruction.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Rather, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155, (1977); *see also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir.2000).  A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  *Jones v. United State*s, 527 U.S. 373, 391 (1999); *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).  State law instructional errors rarely form the basis for federal habeas relief.  *Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals rejected Petitioner's argument on direct appeal and ruled the evidence supported the jury instruction, and that counsel was not ineffective for failing to object:

> Defendant argues that he was denied a fair trial when the trial court instructed the jury on aiding and abetting, or, alternatively, that defense counsel was ineffective for failing to raise objections to the instruction. We disagree.
>
> Jury instructions that involve questions of law are reviewed de novo, but a trial court's determination whether an instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). However, unpreserved instructional issues are reviewed for plain error affecting substantial rights. See *People v Knapp*, 244 Mich App 361, 375; 624 NW2d 227 (2001).
>
> A criminal defendant has a right to have a properly instructed jury. See MCL 768.29; *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Jury instructions must cover each element of each offense charged, along with all material issues, defenses, and theories that have evidentiary support. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). Conversely, an instruction should not be given that is without evidentiary support. *People v Wess*, 235 Mich App 241, 243; 597 NW2d 215 (1999).
>
> In this case, the trial court's instructions to the jury upon the close of proofs included the following:
>
> > In this case the defendant is charged with committing first degree premeditated murder, felon in possession of a firearm, and two counts of felony firearm, and the lesser offense of second degree murder, or intentionally assisting someone else in committing the above offenses. Anyone who intentionally assists someone else in committing a

crime is as guilty as the person who directly commits it and can be convicted of that crime as an aider and abettor.

To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the . . . alleged crime was actually committed either by the defendant or by someone else. It does not matter whether anyone else has been convicted of the crime. Second, that before or during the assist in the commission of the crime. Third, the defendant must have intended the commission of the crime alleged or must have known that the other person intended its commission at the time of the giving of the assistance.

It does not matter how much help, advice, or encouragement the defendant gave. However, you must decide whether the defendant intended to help another commit the crime and whether his help, advice, or encouragement actually did help, advise, or encourage the crime.

Even if the defendant knew that the alleged crime was planned or was being committed the mere fact that he was present when it was committed is not enough to prove that he assisted in committing it.

Defendant does not suggest that the trial court misstated the law of aiding and abetting. Rather, defendant argues that the evidence did not give rise to any such alternative theory of defendant's participation in the subject shooting.

The prosecution points out that the defense strategy at trial consisted mainly of trying to cast doubts on the veracity of the main prosecution witness's identification of him as the shooter, and also that the evidence indicated that there were three participants in the criminal episode at issue—the man who shot the victim with a long arm firearm, the man who detained the

main witness with a handgun, and the person who drove the shooter from the scene. The main witness stated that the man who threatened him with a handgun wore a mask, but defendant did not, but another witness described the rifle-toting shooter as wearing "a black mask where you could only see the eyes", and still another was unsure about any face covering for the man pursuing the victim but "thought . . . it could have been a bandana." In addition, one witness described the man with a rifle as dressed entirely in dark colors, but another described a white shirt.

"The jury may be instructed about aiding and abetting where there is evidence that (1) more than one person was involved in committing a crime, and (2) the defendant's role in the crime may have been less than direct participation in the wrongdoing." *People v Bartlett*, 231 Mich App 139, 157; 585 NW2d 341 (1998).  In this case, the evidence indicated that three persons were involved in the offense, and there was just enough inconsistency, or possible confusion, regarding the descriptions of the two armed assailants, that a juror could have believed beyond a reasonable doubt that defendant was properly identified as one the participants, but uncertain whether defendant was the person responsible for the shooting.

The prosecuting attorney touched on an aiding and abetting theory in closing argument, stating:

> The Judge will also instruct[] you as to the concept of aiding and abetting. So, the evidence in this case, pretty clear, that the defendant is the shooter. And, some of you might think well yeah he's the shooter. Others—others of you, well at least he's there, all right.  And, the Judge will instruct you, anyone who intentionally assists someone else in committing a crime is as guilty as the person who directly commits it and . . . can be convicted of that crime as an aider and abettor.  So, it really doesn't matter.  Some of you may think well he's the shooter, some of you may think he's the aider and abettor, there really is no difference under

the law. Aiding and abetting doesn't matter how much encouragement, could be providing the gun, being the lookout, being the driver of the car, all of that relates to aiding and abetting, but the testimony particularly from Kentral Bell and other witnesses and the investigation in this case clearly show that the defendant in fact was the shooter in this case.

The prosecuting attorney thus encouraged jurors harboring some doubts about the prosecution's theory of the case only as regarded defendant's role as the shooter to harmonize with those who were firmly convinced of that aspect, and the argument drew no defense objections.

In light of the evidence of multiple participants, and given that the eyewitnesses were not entirely consistent about the appearances of the two gunmen, any objections to argument or instruction putting forward aiding and abetting as an alternative theory of defendant's responsibility for the criminal conduct at issue would have been properly overruled. Accordingly, defense counsel's performance want of such meritless objection. See *Ericksen*, 288 Mich App at 201.

*Carter*, 2019 WL 3433079, at *7-8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, with respect to the state court's ruling that the instruction was proper, federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 1975); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review"). The nature of a

18

particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003).   Because the Michigan Court of Appeals found that Michigan law supported the giving of an aiding and abetting instruction, this Court must defer to that determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d 542, 558 (6th Cir. 2000).

Second, Petitioner fails to establish that the trial court's aiding and abetting jury instruction rendered his trial fundamentally unfair.  The record is clear that the jury instruction was supported under Michigan law. "An aiding and abetting instruction is proper where there is evidence that (1) more than one person was involved in the commission of a crime, and (2) the defendant's role in the crime may have been less than direct participation in the wrongdoing."  *People v. Head*, 211 Mich. App. 205, 211, 535 N.W.2d 563, 566 (1995).  The prosecution presented evidence that at least three individuals were involved in the victim's murder.  Further, the prosecution presented evidence that proved that even if Petitioner was not the individual who shot the victim, he was certainly involved and participated in the crime in some capacity. Therefore, the jury instruction

did not amount to a constitutional violation.    Habeas relief is not warranted on this claim.

Third, Petitioner fails to establish that trial counsel was ineffective for failing to object to the instruction.  Trial counsel is not ineffective for failing to make a meritless objection. *Tackett*, 956 F.3d at 375. Because the Michigan Court of Appeals determined that an aiding and abetting instruction was proper, Petitioner's trial counsel was not ineffective for failing to raise a meritless objection.  Therefore, this claim fails as well.

## IV. Conclusion

The state appellate court's decision on Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the Court denies the petition for a writ of habeas corpus.

The Court declines to grant a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000)).  Therefore, the Court will deny a certificate of appealability.

## V. Order

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner will be **DENIED** leave to appeal *in forma pauperis* as an appeal cannot be taken in good faith.

**IT IS SO ORDERED.**

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

Dated:  July 31, 2023